# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE HOUGH, ) | |
| MARLENE MISAVAGE, and ) | |
| GAIL SMITH, ) | |
|     Plaintiffs, ) | Civil Action No. 12-253Erie |
| ) | |
| v. ) | Magistrate Judge Baxter |
| ) | |
| ROMAN CATHOLIC DIOCESE ) | |
| OF ERIE, and SHENANGO VALLEY ) | |
| CATHOLIC SCHOOL SYSTEM, ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER[1]

M.J. Susan Paradise Baxter

Plaintiffs filed this civil action under the Age Discrimination in Employment Act and Pennsylvania Human Relations Act on October 18, 2012. Plaintiffs Elaine Hough, Marlene Misavage, and Gail Smith allege that they are former employees of the Roman Catholic Diocese of Erie who were discriminated against on the basis of their age.

According to the Amended Complaint, each of the three Plaintiffs was employed for over 30 years by the Diocese and was a teacher in the Notre Dame School at the end of the 2010-2011 school year. At that time, the Diocese announced that Notre Dame School and two other Catholic schools in the Shenango Valley area were closing, and Shenango Valley Catholic School System was being formed. Each of the three Plaintiffs was invited to apply and interview for positions within the newly consolidated school system. Each did so and each was not rehired. Instead, it is alleged that Defendants hired less qualified and significantly younger persons.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), in April of 2013 the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 11, 12.

Defendants have filed a motion to dismiss under Rule 12(b)(6) and/or for summary judgment under Rule 56, arguing that the ADEA claims are subject to the ministerial exception as set forth in Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC, ___ U.S. ___, 132 S.Ct. 694 (2012). ECF No. 8. Plaintiffs have filed a brief in opposition. ECF No. 13. There has been no discovery in this case. This Court heard oral argument on the motion on January 22, 2014. These issues are ripe for disposition by this Court.

Because the parties have submitted affidavits both in support of and in opposition to the pending motion, this Court will treat the motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998) ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

---

[2] A material fact is a fact that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. at 249. "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).

3

Defendants move for summary judgment on the sole basis that Plaintiffs' ADEA claims are subject to the ministerial exception as set forth by the Supreme Court in Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC, ___ U.S. ___, 132 S.Ct. 694 (2012). The ministerial exception arises from the conflict between federal employment discrimination statutes and constitutional principles of church autonomy guaranteed by the First Amendment's Religion Clauses. The Circuit Courts of Appeal, including the Third Circuit, have long recognized the "ministerial exception" in employment discrimination cases.[3] See Petruska v. Gannon University, 462 F.3d 294 (3d Cir. 2006). Grounded in the Religion Clauses of the First Amendment, the ministerial exception precludes federal claims of employment discrimination brought by ministers against a religious institution.

The U.S. Supreme Court first considered the ministerial exception in Hosanna-Tabor formally recognizing this exception to employment discrimination statutes. 132 S.Ct. 694. The Court determined that the exception "precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers" (id. at 705) and further opined that:

> "By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions."

---

[3] Prior to the decision in Hosanna-Tabor, the First, Third, Tenth, and Ninth Circuits treated the ministerial exception as an affirmative defense under Federal Rule of Civil Procedure 12(b)(6), while the Sixth and Seventh Circuits treated it as a jurisdictional defect under Rule 12(b)(1), and the Fifth and Eleventh Circuits treated it as permitting courts to construe anti-discrimination laws so as not to apply to claims between ministers and their churches. See Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 171 n.2 (5th Cir. 2012) citing EEOC v. Hosanna-Tabor Evangelical Lutheran Church & Sch., 597 F.3d 769, 775 (6th Cir. 2010), rev'd ___ U.S. ___, 132 S.Ct. 694 (2012). The Supreme Court resolved this split of authority holding that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not as a jurisdictional bar." Hosanna-Tabor, ___ U.S. at ___, 132 S.Ct. at 709 n.4.

Id. at 706. [4]

The Hosanna-Tabor Court declined to "adopt a rigid formula for deciding when an employee qualifies as a minister" noting that its ruling was limited to the specific facts of the case. Id. at 707 ("It is enough for us to conclude, in this our first case involving the ministerial exception, that the exception covers Perich, given all the circumstances of her employment.") . Of course, the ruling that Cheryl Perich's position as a "called" teacher barred a discrimination suit against the church that terminated her employment may be analyzed for factors used by the high court to make this determination.

This is precisely what the district court did in Dias v. Archdiocese of Cincinnati, 2012 WL 1068165 (S.D.Ohio 2012). Its review is instructive:

> The [Supreme] Court identified facts related to Perich's employment and explained how those facts contributed to a conclusion that she was a ministerial employee. The Court noted that the school "held Perich out as a minister," that it issued her a "diploma of vocation" according her the title "Minister of Religion, Commissioned." *Hosanna-Tabor*, 132 S.Ct. at 707. Perich "was tasked with performing that office 'according to the Word of God and the confessional standards of the Evangelical Lutheran Church as drawn from the Sacred Scriptures.' " *Id.* The church, "prayed that God 'bless [her] ministrations to the glory of His holy name." *Id.* In a supplement to the diploma, the congregation undertook to periodically review Perich's "skills in ministry" and "ministerial responsibilities," and to provide for her "continuing education as a professional person in the ministry of the Gospel." *Id.*
>
> The Court also noted that Perich's "title as a minister reflected a significant degree of religious training, followed by a formal process of commissioning." *Hosanna-Tabor*, 132 S.Ct. at 707. She had to complete eight college-level courses in subjects such as biblical interpretation, church doctrine, and the ministry of the Lutheran teacher. *Id.* After finishing the schooling, she had to "obtain the

---

[4] The reasons underlying a church's employment decisions are wholly immaterial to determining whether the ministerial exception applies in the first instance. Id. at 709 ("The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful – a matter 'strictly ecclesiastical' – is the church's alone.").

> endorsement of her local Synod district by submitting a petition that contained her academic transcripts, letters of recommendation, personal statement, and written answers to various ministry-related questions," and then pass an oral examination at a Lutheran college. *Id.* Perich, as a result of her training and commission, was granted tenure, and "her call could be rescinded only upon a supermajority vote of the congregation-a protection designed to allow her to 'preach the Word of God boldly.' " *Id.*
>
> Finally, the Court reviewed Perich's job duties, noting that she taught her students religion four days a week, and led them in prayer three times a day. *Id.* "Once a week, she took her students to a school-wide chapel service, and-about twice a year-she took her turn in leading it, choosing the liturgy, selecting the hymns, and delivering a short message based on verses from the Bible." *Id.* During her last year of employment, Perich also led her fourth graders in a brief devotional exercise each morning. *Id.* Considering all of the above, the formal title given to Perich by the church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the church, the Court concluded she was a minister covered by the ministerial exception. *Id.*

Id. at *4-5.

The difference between such an analysis and the case here is that Defendants do not provide such broad evidence for this type of review. Not only has full discovery not been had, but importantly, Defendants believe that the affidavits of Father Nicholas Rouch, Vicar for Education for Defendant Diocese of Erie, are all the evidence needed for the application of the exception. ECF No. 8-5; ECF No. 18.

The Rouch Affidavits testify that the obligations of teachers in Catholic schools in the Diocese, regardless of the subject matter or grade level, generally include: recognizing the religious nature of the school and understanding their obligation to observe and support the philosophy of Catholic education and to recognize and support the inherent Catholic nature of the schools; fulfilling the requirements of the Spiritual Journey for Catechists for elementary and middle school teachers in all schools within the Diocese of Erie; and adhering to the official teachings, doctrines and laws of the Roman Catholic Church. Id. Further, Father Rouch explains:

6

> "Catholic schools and their teachers strive to relate all human culture eventually to the news of salvation, so that life of faith will illuminate the knowledge that the students gain of the world, of life and of mankind. Accordingly, instruction in religious truth and values is an integral part of the school program. It is not one more subject along side the rest, but instead it is perceived and functions as the underlying reality in which the student's experience of learning and living achieve their coherence and their deepest meaning."

ECF No. 8-5, ¶ 5.

Defendants also invoke "history," arguing that the "teachings and policies of the Roman Catholic Church reflect the clear intention on the part of (and practice by) the Roman Catholic Church to treat teachers in Catholic schools, including the Plaintiffs, as ministers of the faith, regardless of grade level, and regardless of subject matter. This is not a position lately arrived at, as reflected by the official writings of the Roman Catholic Church over at least the past 50 years." ECF No. 9, page 9.

Rather than a Hosanna-Tabor-type analysis based on a well-developed record with evidence of Plaintiffs' job duties and functions[5], as well as the duties currently performed by those who were hired in their stead, this Court is being asked to rule in Defendants' favor because the Vicar of Education testifies to the fact that all teachers are considered to be ministers of the faith by the Diocese. Although the Supreme Court refused to provide a bright line test for a determination of when someone is accorded ministerial status, Defendants' argument – that all teachers are considered to be ministers by Defendants – was **not** enough, in and of itself, for the high court in Hosanna-Tabor.

In his concurring opinion, Justice Thomas said as much when he posited that he was writing separately because he believed that such a good faith assertion **should** be enough: "The Court thoroughly sets forth the facts that lead to its conclusion that Cheryl Perich was one of Hosanna-Tabor's ministers, and I agree that these facts amply demonstrate Perich's ministerial

---

[5] Some of this information was contained in Plaintiffs' opposing affidavits.

role. But, the evidence demonstrates that Hosanna-Tabor sincerely considered Perich a minister. That would be sufficient for me to conclude that Perich's suit is properly barred by the ministerial exception." Hosanna-Tabor, 132 S.Ct. at 711. This "sincere belief" by the employer was not enough for the majority, despite Justice Thomas' urging, and cannot be the sole basis for the application of the ministerial exception by this Court here.

While the Rouch Affidavits are evidence of the Diocese's view that Plaintiffs' duties "reflected a role in conveying the Church's message and carrying out its mission" (Hosanna-Tabor, 132 S.Ct. at 707), they are not enough for summary judgment as a matter of law. Discovery is needed to provide a fuller picture for this multi-factorial analysis. Upon the limited record before this Court, Defendants' motion will be denied; however, the application of the ministerial exception may be revisited in the future upon a more fully developed factual record.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE HOUGH, | ) | |
| MARLENE MISAVAGE, and | ) | |
| GAIL SMITH, | ) | |
|     Plaintiffs, | ) | Civil Action No. 12-253Erie |
| | ) | |
| v. | ) | Magistrate Judge Baxter |
| | ) | |
| ROMAN CATHOLIC DIOCESE | ) | |
| OF ERIE, and SHENANGO VALLEY | ) | |
| CATHOLIC SCHOOL SYSTEM, | ) | |
|     Defendants. | ) | |

**O R D E R**

AND NOW, this 4th day of March, 2014;

IT IS HEREBY ORDERED that Defendants' motion to dismiss and/or for summary judgment [ECF No. 8] is DENIED.

This Court will issue a separate Order regarding an Initial Scheduling Conference.

                                                        /s/ Susan Paradise Baxter
                                                        SUSAN PARADISE BAXTER
                                                        United States Magistrate Judge